## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Marc Andre Fleurival,<br>　　　Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21cv340 (AJT/TCB) |
| | ) | |
| Carolina Detention Facility, et al.,<br>　　　Defendants. | ) | |

### MEMORANDUM OPINION & ORDER

Marc Andre Fleurival, a former inmate housed at Caroline Detention Facility (the "Detention Facility"), while in the custody the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE"), sued the Detention Facility and DHS, alleging violations of his rights under the Americans with Disabilities Act ("ADA"), see 42 U.S.C. §§ 12132–33, Section 504 of the Rehabilitation Act ("RA"), see 29 U.S.C. § 794, and the Fifth Amendment to the Constitution, see 42 U.S.C. § 1983; Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Before the Court are (1) the Detention Facility's motion to dismiss [Doc. No. 16] [1]; and (2) DHS's motion to dismiss and/or for summary judgment [Doc. Nos. 23, 24]. Defendants have sent Fleurival the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Doc. Nos. 16, 23, 24], and Fleurival has not responded to the motions.

### I. Background

In evaluating a motion to dismiss, the Court accepts as true the complaint's factual allegations. See Lokhova v. Halper, 995 F.3d 134, 141 (4th Cir. 2021). The complaint was filed

---

[1] As the owner of the Detention Facility, Peumansend Creek Regional Jail Authority has filed the motion to dismiss on the Detention Facility's behalf.

while Fleurival was still confined at the Detention Facility, and it targets the facility's conditions of confinement throughout the ongoing COVID-19 pandemic. In particular, Fleurival alleges that he had been confined alongside numerous detainees infected with COVID-19 in an overcrowded facility in which social distancing was impossible. Fleurival further alleges that he suffers from several "chronic care conditions," including "asthma, sleep disorders, mental illnesses including post-traumatic stress, paranoia, anxiety disorders, and more." [Doc. No. 1]. He was "scared as to what would happen to him if he catches the deadly virus due to his asthma." [Id.].

Fleurival claims that the conditions at the Detention Facility violated his rights under the due process clause, the ADA, and the RA. For relief, he seeks an injunction directing the defendants to review his confinement as required for class members in Fraihat v. ICE, 445 F. Supp. 3d 709 (C.D. Cal. 2020) [hereinafter Fraihat I], *reversed*, 16 F. 4th 613 (9th Cir. 2021) [hereinafter Fraihat II]], and to order his immediate release. He also requests $2.5 million in monetary damages.

## II. Standard of Review

The Court evaluates a complaint's sufficiency when reviewing it under Federal Rule of Civil Procedure 12(b)(6). See Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 234 (4th Cir. 2021). To survive a motion to dismiss, the complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

## III. Motions to Dismiss

### A) Mootness

Before assessing the motions to dismiss, the Court first must address threshold jurisdictional questions, particularly, whether Fleurival's release from custody moots some of his claims. See Friedman's, Inc. v. Dunlap, 290 F.3d 191, 197 (4th Cir. 2002) (recognizing court's

2

ability to raise mootness <u>sua sponte</u> because it "goes to the heart of the Article III jurisdiction of the courts") (internal quotation marks and citation omitted). "A claim may be mooted when the claimant receives the relief he or she sought to obtain through the claim, because the court no longer has effective relief to offer." <u>See</u> <u>Williams v. Ozmint</u>, 716 F.3d 801, 809 (4th Cir. 2013) (internal quotation marks, alteration, and citation omitted). Here, DHS notified the Court that on September 2, 2021, Fleurival was released from ICE custody. [Doc. No. 27]. Thus, Fleurival no longer needs this Court to order defendants to provide a custody hearing or to release him, rendering moot the claims seeking injunctive relief. <u>See</u> <u>Rendelman v. Rouse</u>, 569 F.3d 182, 186 (4th Cir. 2009) (observing that, generally, "a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there").[2] That leaves for the Court's adjudication only Fleurival's claims for monetary relief— that defendants subjected him to unconstitutional conditions of confinement and violated his rights under the ADA and RA. The Court will address each remaining claim in turn.

*B) Conditions of Confinement - § 1983*

The Detention Facility argues that it is not a legal entity that can be sued. Citing to Virginia Code § 53.1-95.7(11), it argues that the Peumansend Creek Regional Jail Authority, which owns and operates the Detention Facility, can be sued, but not the jail itself. It further cites to <u>Latson v. Clarke</u>, No. 1:16-cv-447, 2016 WL 11642365, at *1 (E.D. Va. Oct. 14, 2016), in which a district judge concluded that Rappahannock Regional Jail was not a proper party to suit because "it is a building operated by a jail authority and not a legal entity that Virginia has vested

---

[2] Additionally, after the defendants filed their respective motions, the Ninth Circuit vacated the nationwide injunction entered by the U.S. District Court for the Central District of California in <u>Fraihat I</u>. <u>Fraihat II</u>, 16 F. 4th 613 (4th Cir. 2021). Thus, to the extent Fleurival bases his arguments seeking a custody hearing based on the now-defunct injunction, those arguments are also moot.

with the capacity to be sued." But these citations alone do not demonstrate that the Detention Facility is subject to the same legal standing as Rappahannock Regional Jail. Therefore, the Court cannot grant the motion to dismiss on this basis.[3]

The Court will grant the motion to dismiss, however, based on a different ground. Assuming without deciding that the Detention Facility is a proper party, it would not be amenable to suit under § 1983. The statute permits lawsuits only against a "person," who, under color of state law, deprives another person of rights guaranteed by the Constitution or federal law. 42 U.S.C. § 1983. Jails in Virginia "are arms of the state for Eleventh Amendment purposes and thus not 'persons' under § 1983." McCoy v. Chesapeake Corr. Ctr., 788 F. Supp. 890, 892 (E.D. Va. 1992). The § 1983 claim therefore cannot proceed against the Detention Facility, and the claim will be dismissed.

### C) Conditions of Confinement - *Bivens*

Although Fleurival invokes § 1983 for his constitutional claim against DHS, the agency rightly observes that the statute applies only to suits against state actors, and so the conditions of confinement claim must be brought under Bivens, 403 U.S. 388 (1971). Bivens and its progeny allow a private right of action for a limited subset of constitutional claims. See generally Ziglar v. Abbasi, 137 S. Ct. 1843 (2017). DHS argues that, as a federal agency, it cannot be sued under Bivens. That is correct; under Bivens, only individual federal officers may be sued. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001); F.D.I.C. v. Meyer, 510 U.S. 471, 486 (1994); Doe v. Chao, 306 F.3d 170, 184 (4th Cir 2002). The conditions-of-confinement claim against DHS therefore must be dismissed.

---

[3] This argument may have been more appropriate in a motion for summary judgment, where the Detention Facility could have proffered evidence to support its contention.

*D) RA and ADA*

The Detention Facility argues that the ADA and RA claims should be dismissed because the complaint does not allege facts showing that Fleurival is disabled and, even if it did, the complaint does not allege that Fleurival is qualified for a particular benefit and was excluded from it on the basis of his disability. DHS argues that it can be sued only under the RA, not the ADA, and for the RA claim, Fleurival has not alleged facts demonstrating a plausible claim under any theory of relief.

First, DHS rightly asserts that the ADA does not permit suits against federal agencies. As relevant here, under the ADA, "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a *public entity*." 42 U.S.C. § 12132 (emphasis added). The statute's definition of "public entity" extends to state and local governments, not the federal government. Id. § 12131(1); see also Dyrek v. Garvey, 334 F.3d 590, 597 n.3 (7th Cir. 2003). The ADA claim against DHS therefore will be dismissed.

That leaves the ADA claim against the Detention Facility and the RA claims against both defendants, none of which state a claim for relief.[4] Courts recognize three types of claims brought under the ADA and RA: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations. A Helping Hand, LLC v. Baltimore Cnty, 515 F.3d 356, 362 (4th Cir. 2008) (observing that "Congress has directed courts to construe the ADA to grant at least as much protection as the Rehabilitation Act and its

---

[4] Fleurival filed a nearly identical complaint in January 2021, which the Court dismissed under 28 U.S.C. § 1915A. The Court has borrowed heavily from the dismissal order in that case to conserve judicial resources by declining to reinvent the proverbial wheel. See Fleurival v. Caroline Detention Facility, 1:21cv5 (E.D. Va. Sept. 7, 2021).

implementing regulations"). Establishing liability under both statutes involves analyzing the same elements except for causation. See Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461–62 (4th Cir. 2012). To state a claim for relief under both statutes, Fleurival first must allege that "(1) [he has] a disability; (2) [he is] otherwise qualified to receive the benefits of a public service, program, or activity; and (3) [he was] denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of [his] disability." Wicomico Nursing Home v. Padilla, 910 F.3d 739, 750 (4th Cir. 2018) (internal citation omitted). To demonstrate causation "under the Rehabilitation Act, the plaintiff must establish he was excluded solely by reason of his disability; the ADA requires only that the disability was a motivating cause of the exclusion." Id. (internal quotation marks and citations omitted).

Here, even assuming arguendo that one of Fleurival's ailments is a qualified disability, the complaint does not allege that Fleurival was excluded from any public benefit, program, or activity or that he had been treated differently on account of his disability. See Fedynich v. Boulder Hous. Partners, No. 3:20cv165, 2020 WL 5371352, at *11 (E.D. Va. Sept. 8, 2020) (concluding that prisoner-plaintiffs' "ADA and RA claims must fail, because Plaintiffs fail to allege with sufficient particularity either a disability from which they suffered or a nexus between that disability and Defendants' allegedly discriminatory conduct"). Instead, Fleurival asserts that he feared contracting COVID-19 based on universal conditions of confinement. To the extent Fleurival is claiming that the Detention Facility did not provide adequate safeguards against contracting COVID-19, these statutes "do[] not create a remedy for medical malpractice." See Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996); see also A.H. v. St. Louis Cnty, 891 F.3d 721, 729 (8th Cir. 2018) ("Improper medical treatment claims may not be

6

brought under the ADA or RA."); Baxley v. Jividen, 508 F. Supp. 3d 28, 62 (S.D. W. Va. 2020) ("ADA cannot be used to assert a claim of inadequate medical care.").

Accordingly, it is hereby

ORDERED that defendant Caroline Detention Facility's motion to dismiss [Doc. No. 16] be and is GRANTED; and it is further

ORDERED that defendant DHS's motion to dismiss [Doc. No. 23] be and is GRANTED; and it is further

ORDERED that defendant DHS's motion for summary judgment [Doc. No. 24] be and is DENIED AS MOOT; and it is further

ORDERED that this civil action be and is DISMISSED.

To appeal this decision, plaintiff must file a Notice of Appeal ("NOA") with the Clerk's Office within thirty (30) days of the date of this Order, including in the NOA the date of the Order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the appellate court. Failure to file a timely NOA waives the right to appeal this Order.

The Clerk is directed, pursuant to Federal Rule of Civil Procedure 58, to enter final judgment in favor defendants; to send a copy of this Order to plaintiff and to counsel of record for defendants; and to close this civil action.

Entered this ___19___ day of _____JAN_____, 2022.

Alexandria, Virginia

_____
Anthony J. Trenga
United States District Judge